EMIG *v.* FRANK P. MILLER CORPORATION.

1. QUIETING TITLE—WHAT CONSTITUTES CLOUD UPON TITLE.

   A cloud upon one's title is something which constitutes an apparent incumbrance upon it, or an apparent defect in it; something that shows *prima facie* some right of a third party, either to the whole or some interest in it.

2. SAME—QUITCLAIM DEED IS CLOUD UPON TITLE ALTHOUGH RECORDED SUBSEQUENTLY.

   A quitclaim deed, although recorded subsequent to a warranty deed conveying the same land to other grantees, is a cloud upon their title, entitling them to relief under 3 Comp. Laws 1915, § 12302, subd. 4, since, under the statute (3 Comp. Laws 1915, § 11721), their deed would take preference only in case they were good-faith pur-

---

[1]Cloud on Title, 11 C. J. p. 920; Quieting Title, 32 Cyc. p. 1314; [2]Id., 32 Cyc. p. 1317; 5 R. C. L. 657; 1 R. C. L. Supp. 1416; 4 R. C. L. Supp. 340; 6 R. C. L. Supp. 311.

chasers, a fact which could not be determined by an examination of the record even by one skilled in the law.

Appeal from Wayne; Webster (Clyde I.), J.   Submitted January 20, 1927.   (Docket No. 138.)   Decided June 6, 1927.

Bill by Ralph C. Emig and others against the Frank P. Miller Corporation and another to quiet title to land.   Tony Volpe and another were permitted to intervene as parties plaintiff.   From a decree for plaintiffs, defendants appeal.   Affirmed.

*C. H. & G. M. Lehman,* for plaintiffs.

*Walter M. Nelson,* for intervening plaintiffs.

*Albert McClatchey* and *Harry J. Weber,* for defendants.

BIRD, J.   Plaintiffs, including intervening plaintiffs, acquired title to several lots in the Humber Park subdivision, in the city of Detroit.   They were originally owned by William Proctor and passed from his estate to his daughter, Minnie Proctor, and other heirs.   The lots were conveyed to plaintiffs and recorded in 1922 and 1923.   It is not disputed by defendants that plaintiffs have title to these lots in fee simple.   In May, 1924, Frank Miller conveyed the following interest to the Frank P. Miller Corporation by quitclaim deed, and placed the same of record:

"The purpose of this deed is to transfer the contract interest of the first party acquired by virtue of certain land contracts dated June 1, 1916, wherein John W. Dye and Cassie Dye, his wife, and William E. Dye and Grace L. Dye, his wife, are vendors, and Florence K. Elliott, A. C. Strack, E. E. Cooper, Lyle Lewis, John Robson, Harvey Hubbard, Thomas Goebel, Don Wilson, L. M. Baker, C. Rassmussen, E. W. Brown, L. S. Lamb, A. H. Wolf and A. D. Mack are vendees, in which contracts Minnie Proctor acquired the vendors' in-

terest, and the said Frank P. Miller acquired the vendees' interest and paid thereon to the said Minnie Proctor and under which contracts said party of the first part is entitled to deed of the said within described premises."

In view of the fact that the quitclaim deed was executed and recorded after plaintiffs' deeds, they requested the Miller Corporation to release its deed of record.   Its failure to comply with this request moved plaintiffs to file this bill to remove the cloud from their title.

Defendant makes answer that the quitclaim deed did not cloud their title.   It concedes that plaintiffs have a legal title, inasmuch as they recorded their deeds before the quitclaim deed was recorded.   Therefore, it argues that plaintiffs have not stated a case for relief in their bill.   So the question is presented whether plaintiffs' titles are clouded by the record of the quitclaim deed.

The statute authorizes courts of equity

"To hear and determine suits instituted by any person claiming the legal or equitable title to lands, whether in possession or not, against any other person not in possession, setting up a claim thereto in opposition to the title claimed by the plaintiff.   And, if the plaintiff shall establish his title to such lands, the defendant shall be decreed to release to the plaintiff all claims thereto."   3 Comp. Laws 1915, § 12302, subd. 4.

"The general rule is that if the title against which relief is prayed is of such a character that, if asserted by action and put in evidence, it would drive the true owner of the property to the production of his own title in order to establish a defense, it constitutes a cloud which he has a right to have removed.   The rule is that relief will be granted in equity when the complainant shows a perfect title, legal or equitable, and the title of the defendant is shown to be invalid, or where property is sought to be taken under void proceedings.   This rule applies to deeds which are

voidable or void, whether in whole or in part, as creating perpetuities or as operating to embarrass alienation," etc.    5 R. C. L. p. 657.

"A cloud upon one's title is something which constitutes an apparent incumbrance upon it, or an apparent defect in it; something that shows *prima facie* some right of a third party, either to the whole or some interest in it."    *City of Detroit* v. *Martin,* 34 Mich. 170 (22 Am. Rep. 512).

This court is in accord with that rule:

"A cloud upon a title is but an apparent defect in it.    If the title, sole and absolute in fee, is really in the person moving against the cloud, the density of the cloud can make no difference in the right to have it removed.    Anything of this kind that has a tendency, even in a slight degree, to cast doubt upon the owner's title, and to stand in the way of a full and free exercise of his ownership, is, in my judgment, a cloud upon his title which the law should recognize and remove."    *Whitney* v. *City of Port Huron,* 88 Mich. 268 (26 Am. St. Rep. 291).

See, also, *Hamburger* v. *Veness,* 232 Mich. 341.

Applying these tests to the facts before us, I am persuaded that the cloud exists in the present case. Here we have both parties claiming interest in these lots from the same common grantor.    To plaintiffs she granted a fee simple.    To Miller or to his assignors she grants certain contract rights.    Both of these evidences of interest are placed of record.    This is a situation that would make the average contemplated purchaser or mortgagee shy and refuse to purchase or become mortgagee unless the matter was cleared up. This is exactly what did happen, as is shown by the proofs.    One learned in the law might not consider the situation serious, but the laity would hesitate to act in such circumstances, and thereby the recorded quitclaim deed would stand in the way and prevent a free exercise of plaintiffs' ownership of the lots.

It is true the following section provides that the

deed first recorded shall have the preference under certain circumstances:

"Every conveyance of real estate within the State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quitclaim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof."  3 Comp. Laws 1915, § 11721.

But suppose one skilled in the law should discover the entry of the quitclaim deed on the abstract.  He would, of course, know that if plaintiffs were good-faith holders, who had paid a valuable consideration therefor, their deed would take preference, but if they were not good-faith holders for value their deeds would not take preference, even though they were recorded before defendants'.  A person examining the abstract under such circumstances would have no way to determine whether such proof could or would be made by the owner of the quitclaim deed.  One of the objects of this remedy is to enable the owner of real estate to rid his title of fictitious and invalid claims.  This quitclaim deed of record will be a continual interference with the free movement of this property in the market, and we think it should be relieved of the invalid paper which causes it.

The decree will be affirmed, with costs.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, and MCDONALD, JJ., concurred.  CLARK, J., did not sit.